NATHAN HARRISON, Plaintiff in Error,

*vs.*

ROYAL BROWN, Defendant in Error.

ERROR TO WALWORTH CIRCUIT COURT.

The statute of this state makes no distinction between a voluntary or involuntary trespass, or a trespass committed personally, or by cattle or swine: a warrant is a proper process in either case.

It is sufficient if the *locus in quo* be reasonably certain in the description, and the proof substantially correspond.

If swine depasturing in the highway break into an adjoining close, though the fence be defective, the owner is liable.

The public have the full right of passage along and over the highways, but have not the right of pasturage therein.

THIS was an action of trespass commenced by warrant, June 18, 1855, on the affidavit of Royal Brown, the plaintiff below, against Nathan Harrison, defendant below, before C. L. Oatman, a justice of the peace of Walworth county. The warrant was served and returned forthwith, by arresting the defendant. The declaration was in the usual form, *quare clausum fregit*, with the hogs of the plaintiff, &c. The *locus in quo* was described as " a certain close of the plaintiff situated in the town of Bloomfield aforesaid, bounded as follows, to wit: on the south by state of Illinois; on the west by land of Mr. Whiting; on the north by land of Mr. Christian, Chas. High and James Grear; and on the east by land of Charles Hamlin and Nathan Harrison."

The defendant made the usual affidavit for the removal of the suit to another justice, and the papers were thereupon transmitted to Chas. H. Smedley, the nearest justice. The defendant then pleaded the general issue, with notice that the fences of the plaintiff were insufficient, and not built as the law requires; also, that hogs are free commoners in the town of Bloomfield, and permitted to run at large in said town. The plea was filed with leave to withdraw the same and move to dismiss, and the cause

adjourned until the 19th of June, 1855, at which time the parties appeared, when the defendant moved to dismiss the cause, for several reasons, among which were : 1. That the transcript did not show when the warrant was returnable, nor what particular process was issued. 2. That Smedley was not the nearest justice qualified by law to try the cause, which motion was overruled.

The defendant then moved to dismiss for other reasons, the following of which only are necessary to be noted : 1. The insufficiency of the affidavit, in not stating that the plaintiff was the owner or possessor of the premises, and that the same are not sufficiently described. 2. That the statute does not authorize the issuing of a warrant for damages done by cattle or hogs, but only for trespass committed by the person. This motion was also overruled, and the cause proceeded to trial by a jury.

The plaintiff proved the *locus in quo* as follows: " the land of the plaintiff is bounded on the south by the state of Illinois, on the west by land owned by Mr. Whiting, on the north by land owned by James Grear, on the east by land owned by Mr. Harrison and Charles Hamlin." The declaration was amended by erasing the names of High and Christian on the north, and inserting the name of Taylor as the owner of a part of the land on the east. The defendant objected to any evidence of damage, as the close was not proved as laid in the declaration. The objection was overruled, and the plaintiff proved that he had some ten acres of corn which had been rooted over by the defendant's hogs. Some twenty-five or thirty rods of the premises lay along the highway. About nine-tenths of the corn was rooted up. The hogs were unruly. Damages estimated at forty dollars.

On the part of the defence, it was proved that the plaintiff's fences were not sufficient to keep the hogs out. On the backside was a ditch fifteen or sixteen inches wide. The jury returned a verdict of no cause of action, and judgment was rendered against the plaintiff for costs. The cause was removed to the Circuit Court by certiorari, when the judgment of the justice was reversed.

*W. T. Murphy*, for the plaintiff in error.

*C. M. Baker*, for the defendant in error.

*By the Court*, COLE, J. We are of the opinion that section 21, of chap. 88, R. S., authorized the commencement of this suit by warrant. The statute does not appear to make any distinction between the case of a voluntary and involuntary trespass. The affidavit for the warrant made before the justice sets forth fully the facts and circumstances upon which the application was based, and which constituted the action or wrong complained of, and was entirely sufficient to authorize the justice in issuing the same; we see no objection whatever to the affidavit; neither do we consider that there was any valid objection to the transcript made out by Justice Oatman, when the cause was removed from before him. It appears to be full and sufficiently explicit in designating the nature of the process issued in the first instance, and all the steps taken in the suit before him, and was also accompanied by the affidavit, warrant, declaration and other papers in the cause. Moreover, had the transcript been less full in this, or any other respect, it would not have deprived the justice of jurisdiction who tried the cause. There can be no doubt but the cause was properly before him for trial.

The plaintiff in his declaration before the justice, described the close in which the trespass was committed with considerable particularity, more, perhaps, than was necessary. In the amended declaration, it was described as being bounded on the east by land owned by Harrison, Hamlin and Taylor; while High, a witness, in describing the premises, said they were bounded on the east by land owned by Harrison and Hamlin. The proof was most clear and conclusive, that the close in which the damage was done, belonged to the plaintiff, and we think was substantially proven as laid in the declaration. Under the circumstances, and considering the evidence in the cause, upon both sides, we think the variance was not very material, and that the defendant was not, and could not have been at all misled by it.

Having thus disposed of the preliminary objections, we come

to the real question in the case, to wit: is Brown entitled to recover for damages done by Harrison's hogs, which entered his close through a defective fence along the highway? It is admitted that the town of Bloomfield, in which the premises were situated, had made no statute regulations determining the time and manner in which swine should be permitted to run at large on the highways in the town. It is further conceded, that the alleged trespass was committed by the hogs escaping through the fence while running at large and depasturing in the highway, and not in consequence of breaking into the close, while being driven along the same *in transitu*. And the proposition contended for by the counsel for the plaintiff in error, is that in the absence of all statute and town regulations, as provided for in section 3, chapter 10, R. S., restraining hogs from running at large on the highway, they are free commoners, and have a right to depasture in the highways; that if they escape into the adjoining close through a defective fence, while thus depasturing, it is an injury for which the law gives no remedy; that a man is as much bound to keep up a legal fence along the highway, to secure his close against such damage, as he is to keep up a legal fence against the adjoining and neighboring close. We do not think that such is the law in this state, and consequently consider the proposition unsound. We are not aware of any statute in force here modifying or changing the common law upon this subject. We have been referred to a provision in the statutes of the territory of Wisconsin (*p.* 117), as changing the common law, and as being in force at the time of the adoption of the constitution, and therefore still changing it. Whether by a correct interpretation of that statute hogs were permitted to run at large in the highways or not, it is not necessary to inquire, for the statute has long since been abrogated. We suppose the common law still prevails, and that it completely and entirely disposes of the whole controversy. For it has been time and time again determined, after the most careful and critical examination of the cases, when the question has arisen for adjudication, that by the principles of the common law an action could be maintained for trespass committed by cattle,

hogs, &c., escaping from the highway upon the adjoining land, although the land be defectively inclosed by fence, provided the cattle be not in the use of the road for the purpose of passage merely. " Every man is bound, upon peril of being accounted a trespasser, to keep such animals as are the subject of absolute property upon his own soil," is said to be the maxim of common law. *Bush vs. Brainard*, 1 *Cow. R.* 78, *note a ; also* 3 *Black.* 210, *Rust vs. Low*, 6 *Mass.* 94. The public have simply an easement, a right of passage along the highway, but not the right to make a pasture of the road. 3 *Kent*, 432; *Stackpoole vs. Healy*, 16 *Mass.* 33; *Wells vs. Howell*, 19 *J. R.* 385; *Holloday vs. Marsh*, 3 *Wend.* 142. And as a general rule in this state, the fee of the highway belongs to the owner of the adjoining ground, subject to this easement or right of passage in the public. Whether it is competent for the legislature to confer upon the electors of the towns the right and power to permit cattle and hogs to depasture in public highways, is not before us for determination. As already stated, no regulation of the town is relied upon, permitting hogs to run at large in Bloomfield. But it is contended that in the absence of such a regulation, hogs are free commoners, and that the same rule applies to them while in the roads depasturing there, as when confined in the close of their owner. We see no good reason why we should depart from well established principles and sanction such a doctrine.

We therefore think that the judgment of the Circuit Court should be affirmed, with costs.