KOCHA, Respondent, vs. UNION TRANSFER COMPANY, Appellant.

*October 21—November 17, 1925.*

*Highways: Negligence: Leading horse by attaching halter to wagon: Proximate cause: Injury to traveler: Liability of owner of horse.*

1. In the absence of an allegation or proof that a horse which kicked plaintiff, or any of three horses which were attached by halters to the rear of a wagon driven by defendant's servant, had any vicious or mischievous propensities, or, if so, that defendant had notice thereof, defendant cannot be held liable for injuries to plaintiff, though the complaint alleged, and there was evidence, that the horses were high-bred, spirited, nervous, active young horses.   p. 135.

2. The owner of a domestic animal other than a dog, as to which the common-law rule has been changed by statute, is not liable for injuries done by it unless he previously had notice of its vicious or mischievous propensities, or the injury was attributable to some neglect on his part; and such rule applies when the animal is lawfully or properly on the highway. p. 135.

3. One kicked by a horse being led along the street by a halter attached to the rear of a wagon may recover for injuries sustained if proximately contributed to by a want of ordinary care in the method of leading the horse, irrespective of its viciousness or reputation therefor; but it is not negligence to so lead the horse along a busy and principal thoroughfare.   p. 137.

4. The absence of any one on the rear of the wagon to give more particular attention to the horses is an insufficient basis for a finding of negligence.  p. 137.

5. It is a. matter of common knowledge that leading horses by a one-foot halter strap attached to the rear of a wagon is not dangerous *per se* as permitting too much freedom of motion. p. 138.

APPEAL from a judgment of the circuit court for Milwaukee county: OTTO H. BREIDENBACH, Circuit Judge. *Reversed.*

On April 25, 1921, defendant's driver, with twelve years' experience as a driver, left defendant's barn on Twelfth street, a short distance to the north of Grand avenue, one of the principal thoroughfares of the city of Milwaukee, on his way to a point several blocks to the east and south of Grand avenue. He drove a delivery wagon, and at the rear end of its six-foot-wide platform were fastened three horses abreast, each attached to the wagon by a halter of such length that the horse's head was about a foot from the wagon. He had driven east on Grand avenue about three blocks when plaintiff, a man about forty-one years of age, riding in the same direction on a bicycle and at a rate of about ten miles per hour, was thrown to the pavement by reason of his bicycle being kicked by the horse which was on the north side.

Testimony on behalf of plaintiff was to the effect that the horses were skittish while being led down the street and one of them was so when leaving the barn. That just before the accident an automobile from the rear sounded its horn as a signal to defendant's driver, who turned closer to the south curb to let it pass, and that at about the same time plaintiff was also passing and was kicked at when he, plaintiff, was about three or four feet north of the horse, that is, to the side. On cross-examination of defendant's driver he stated that it might have been better to have had some one in the rear of the wagon in a position to speak to or in some other manner control the horses.

In the civil court defendant had judgment. On appeal by plaintiff a new trial was ordered in the circuit court, and the jury by special verdict found that the defendant failed to exercise ordinary care in the manner in which it caused the horse to be led through the streets; that such was the proximate cause of plaintiff's injury; that there was no contributory negligence by plaintiff; and assessed damages at $860.

From judgment in plaintiff's favor defendant has appealed.

*Charles M. Scanlan* of Milwaukee, for the appellant.

For the respondent there was a brief by *Raymond T. Zillmer,* attorney, and *Clarence W. Bradford,* of counsel, both of Milwaukee, and oral argument by *Mr. Zillmer.*

ESCHWEILER, J.   Although the complaint alleged that defendant's three led horses were "high-bred, spirited, nervous, active young horses," there was no allegation that the horse which did the kicking or any of the three had any vicious or mischievous propensities, and certainly we should be loath to say that any of the above quoted descriptive adjectives, even if applied to an animal, should be construed as alleging such propensities; nor is it alleged that defendant had notice of any such propensities, if any such there were; nor was evidence offered on the trial in such regard other than that of the skittishness above stated.   There is no basis, therefore, for a claim of liability of defendant on the first of the two common-law grounds upon which the owner or keeper of domestic animals may be held accountable for injuries.   The rule was concisely stated in *Dearth v. Baker,* 22 Wis. 73: "The owner of a domestic animal is not liable for injuries done by such animal, unless he previously had notice of his vicious or mischievous propensities, or the injury was attributable to some neglect on his part."   It was so again stated in *Slinger v. Henneman,* 38 Wis. 504, 507.   It is so generally recognized.   3 Corp. Jur. 89; 1 Rul-

ing Case Law, 1094; 2 Cooley, Torts (3d ed.) p. 693. This is the rule also when the animal is lawfully or properly on the highway. 1 Ruling Case Law, 1095; 3 Corp. Jur. 92.

It is the well recognized rule in England. Oliphant, Law of Horses (Canadian ed.) p. 371; Hanover, Law of Horses (2d ed.) p. 366, sec. 708. It was fully discussed in *Cox v. Burbridge,* 13 Com. B. N. S. 430, decided in 1863, and in the leading case of *Hammack v. White,* 11 Com. B. N. S. 588, in 1862, an action for a death, and in which Mr. Chief Justice ERLE said: "The mere fact of restiveness is not even *prima facie* evidence of negligence." This case was approved and followed in 1880 in *Manzoni v. Douglas,* L. R. 6 Q. B. 145.

This rule of the common law has been changed by statute in this state, but only so far as it affects the dog. While as to the dog there has been taken away his common-law or primitive privilege to a free first bite (*Legault v. Malacker,* 156 Wis. 507, 508, 145 N. W. 1081), although if mad it is restored (*Legault v. Malacker,* 166 Wis. 58, 62, 163 N. W. 476, 1 A. L. R. p. 1109, with note at p. 1113), there has been no modification as to the horse or a taking from him of his free first kick.

In this case not only was there no evidence by plaintiff as to the prior existence of vicious or mischievous propensities, but the defendant, assuming the burden of proving the disposition and nature of this horse, did make such a showing that at the close of the trial it appeared, as radiantly clear as the beams of an unclouded, noonday, summer sun, that, to quote from appellant's brief, "the good character of the horse stands unimpeached."

It being therefore a verity in this case that the horse possessed that which, according to Iago, if in man or woman, "is the immediate jewel of their souls," a good name, it must suffice for the horse and for us, without determining whether, in addition to good character and reputation, he also possessed a rare discriminating intelligence of head or

heels, when, in his pick for his kick, he chose the insensate bicycle rather than the sensating rider, as it is claimed for him by appealing counsel by saying, "he very carefully kicked the bicycle—not the man," and the bicycle in the very center of the handle bars, there leaving his mark, no claim being made that he could write.

If, however, there was a want of ordinary care in the method of leading this horse at the time and place which proximately contributed to the injury, then, irrespective of the character or reputation of the horse, there may be grounds for recovery.

The jury found there was such want of ordinary care and that such was the proximate cause of plaintiff's injury, and appellant challenges this as a question of law, and we think properly.

It is argued by respondent that defendant's negligence as found by the jury may be based upon any one of several theories.

First, that knowing the busy traffic on such a principal thoroughfare as Grand avenue, defendant's driver should have merely crossed it at Twelfth street instead of proceeding along it to the east as he did. As to this point, however, we know of no law which made Grand avenue forbidden territory to the horse and favored territory to a bicycle.

Second, that some one should have been on the rear of the wagon so that more particular attention could have been given these horses. Such suggestion does not appeal to us as a proper one, or sufficient basis for a finding of negligence.

Third, that the horses should have been secured so as to have made it impossible for this accident to happen; that the strap of the halter was too long, as attached to the wagon, and the one foot of space between the horse and the wagon permitted too much freedom of motion and allowed the horse to swing around at right angles to the path in which the wagon was traveling, and to reach the plaintiff

when he was, as claimed by him, three or four feet to the north of the end of the wagon.   No testimony, expert or otherwise, was offered by plaintiff to the effect that such space allowed by the halter was unusual, improper, or unsafe.   The testimony by defendant's driver was uncontradicted that this was the usual method in that city.   Respondent cites *Kwiechen v. Holmes & Hallowell Co.* 106 Minn. 148, 118 N. W. 668, as controlling on this point. We think not.   It was where a led horse ran upon the sidewalk and injured a person there; the evidence was conflicting as to the length of the leading rope, but it was. treated as a conceded fact that the rope was too long and permitted too much freedom of motion.

Though perhaps sadly, yet nevertheless surely, the judiciary must recognize that there is more of verity than of poesy in that modern aphorism—manufactured no doubt in Detroit—that "the auto's exhaust is the fatal gale of the equinox for the equine on our highways," and that Byron's Mazeppas of the future for their wild rides must perforce be tied to hooded radiators for lack of noble steeds, "Tartars of the Ukraine breed," or of any breed, still the era of the horse is not yet so bedimmed by moss and mildew that the courts can no longer see and say that which for centuries has been common knowledge by the common people (including judges) of and concerning this animal so renowned in history and song, of whom it was said by the tormented poet, Job: "He saith among the trumpets, Ha, ha; and he smelleth the battle afar off, the thunder of the captains, and the shouting," who was prior to Pegasus and subsequent to Sheridan's ride.   And so we do say, as a matter of common knowledge and as a matter of law, that the method here shown of tieing and leading the horses was not dangerous *per se*.   It may be further asserted that to have tied them more closely, thereby permitting no freedom of movement to prevent collisions with the wagon, would have been a dangerous method.

Kocha v. Union Transfer Co. 188 Wis. 133.

In this case, therefore, which is so likely to be the last or one of the very last times the vanishing figure of the horse will be stamped upon the dry and dreary pages of our Reports, we declare that the verdict cannot be supported upon this third suggested theory.

On this point we are in accord with much that was said by the Missouri court in the final disposition of the case concerning one of its famous mules; and although we do not deem it necessary to indorse, yet certainly we do not disparage, the pæan that Mr. Justice LAMM there sings in that animal's praise. In that case defendant's driver, riding one mule, was leading by a five or six-foot halter the famous one, a gray, charged with being, but not proven to be, wild and unruly. The unridden mule shied and kicked damage of five dollars to plaintiff's buggy, for which sum plaintiff recovered in justice's court and in circuit court. The court of appeals (156 Mo. App. 427, 136 S. W. 760) approved of this result by a divided court, suggesting that there should be some limit to the length of rope dividing a Missouri mule from its leader in city streets and that such a maximum had been exceeded. The supreme court, however, in *Lyman v. Dale*, 262 Mo. 353, 171 S. W. 352, held that such method was no evidence of negligence even though experts testified that such animals should have been "necking;" this term, of unknown meaning in this locality, is also described as "halter yoked;" that to so hold would amount to overthrowing all common knowledge as to the handling of animals upon the public highways and deciding "that the judgment from start to finish should have been for defendant." What was said, sung, and held in that decision concerning the Missouri mule with all the storied, latent possibilities lurking in its heels will surely support and warrant the conclusion here reached as to this Wisconsin horse. It is true that neither his pedigree, place, nor date of birth appear of record here, but it is disclosed that he had lived with us and worn out his shoes upon our pavements these many

.years; this, in view of the verity of his unimpeached character, *supra,* warrants, if not requires, the presumption in a Wisconsin court that he was Wisconsin bred as well as led.    Then, and of course, being a Wisconsin horse, he, like Webster's Massachusetts, "needs no encomium."

Being satisfied that under the evidence there is shown no reasonable ground upon which the jury's finding that defendant was negligent can be supported, no other features of the case need be considered, and the judgment must be reversed.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.