Leipske, by Guardian, Appellant, v. Guenther, Respondent.*

*March 5—April 7, 1959.*

* Motion for rehearing denied, without costs, on June 2, 1959.

For the appellant there was a brief and oral argument by *Max E. Geline* of Milwaukee.

For the respondent there was a brief and oral argument by *James D'Amato* of Waukesha.

HALLOWS, J.   The trial court was right in refusing to submit a question of defendant's negligence to the jury.

There was no evidence on which a finding of negligence could properly have been based.

In cases where damage is done by animals, the question of the custodian's causal negligence has been treated as depending on reasonable foreseeability that injury to someone may follow. See *McCauley v. International Trading Co.* (1954), 268 Wis. 62, 68–70, 66 N. W. (2d) 633; *Matthews v. Scannell* (1930), 201 Wis. 381, 383, 230 N. W. 53; *Fox v. Koehnig* (1926), 190 Wis. 528, 538–543, 209 N. W. 708. It has been said that generally the owner of an animal is bound to anticipate only such injurious acts as result from the natural traits of the animal or from unusual traits of which he has knowledge, *Fox v. Koehnig* (1926), 190 Wis. 528, 542, 209 N. W. 708, and hence that a horse of previous good character is entitled to a free first kick. *Kocha v. Union Transfer Co.* (1925), 188 Wis. 133, 136, 205 N. W. 923. The opinion in the *Kocha Case* is written in the lighter vein of which Mr. Justice ESCHWEILER was a master.

In the present case it is undisputed that the horse pasture was separated from the schoolyard by a fence at least four feet seven inches high, consisting of woven wire with three strands of barbed wire, which fence fully met the statutory requirements for "legal and sufficient fences" (sec. 90.02 (1), Stats.).* There was no evidence that Brownie had ever bitten or threatened to bite any person, and no evidence that defendant had any reason to believe that Brownie was likely to bite somebody or was vicious in any respect, or that he was anything but a normal, gentle, seven-year-old horse. While some of the school children testified that they had seen Brownie kick and bite other horses and act in a menacing manner toward the children who teased the horses, there was no evidence that such acts had been brought to defendant's attention. Defendant was not bound to anticipate that the

---

* See memorandum on motion for rehearing, post, p. 92. RE-PORTER.

children would tease the normally gentle animal to the point where he would reach over the ordinarily adequate fence and bite somebody. Thus we find no evidence on which defendant could have been wanting in ordinary care.

"In other words, when applying the doctrine of negligence, it seems to be settled as a matter of law that the owner is bound to anticipate only such damages as result from the natural traits and habits of the animals, or from those unnatural traits and habits of the individual animal of which he has knowledge." *Fox v. Koehnig* (1926), 190 Wis. 528, 543, 209 N. W. 708.

While there was testimony that prior to the accident defendant had asked the school authorities to keep the children away from the horses, that request appears to have been occasioned by the fact that children had climbed over the fence and ridden some ponies in the pasture. It is not evidence that defendant suspected or had reason to suspect that Brownie might injure a child on the school grounds.

Appellant further contends that even if defendant was not negligent he was absolutely liable for her damages, on the ground that the horse Brownie was a trespasser on the school land when he bit her and that the possessor of a trespassing animal is absolutely liable for the damage done by the animal in the course of the trespass.

For present purposes we may assume that Brownie trespassed on school property when he reached over the fence, since the ownership of the space above the land is vested in the owner of the surface beneath (sec. 114.03, Stats.), and see *Maitland v. Twin City Aviation Corp.* (1949), 254 Wis. 541, 545, 37 N. W. (2d) 74, and Brownie had no right to insert his head into that space. We may also assume, without deciding, that since the plaintiff was on the school ground incident to her school attendance she can maintain an action based on the trespass on the analogy of a member of a private

possessor's household, though she was not the owner or possessor of the land. See Restatement, 3 Torts, p. 2, sec. 504 (1).

On those assumptions we reach the question of the defendant's absolute liability for the act of his erring horse.

It has often been stated broadly in this and other jurisdictions that regardless of negligence the possessor of an animal is absolutely liable for damage done while the animal is trespassing on the land of another. See, for example, *Harrison v. Brown* (1856), 5 Wis. 27, 30, 31; *Chunot v. Larson* (1878), 43 Wis. 536, 541; *Metropolitan Casualty Ins. Co. v. Clark* (1911), 145 Wis. 181, 183, 129 N. W. 1065; Restatement, 3 Torts, p. 2, sec. 504 (1); 2 Harper and James, Law of Torts, p. 837, sec. 14.11.

More-recent Wisconsin cases have cast doubt upon the broad applicability of that proposition to common domestic animals such as horses. Thus in *Fox v. Koehnig* (1926), 190 Wis. 528, 209 N. W. 708, a case involving injuries inflicted by a horse running loose on a highway, the court said by way of dictum (p. 532):

"The liability of the owner for damage resulting from trespasses committed by his livestock upon the lands of the neighbor is absolute, and depends in no degree upon the question of his negligence. But the owner is not liable for every conceivable damage which his trespassing animals may commit. It is well settled that he must take notice of the natural propensity of cattle. He is liable only for the damages resulting from the natural propensities of his animals, and from such peculiar propensities of individual animals as have come to his attention."

See also *Matthews v. Scannell* (1930), 201 Wis. 381, 230 N. W. 53, relating to liability for injuries inflicted by trespassing dogs.

In the present case there is no evidence that it is a natural propensity of horses to bite people, and we are not prepared to take judicial notice of such a propensity. Neither is there any evidence that the horse Brownie had such a propensity of which defendant knew or should have known.

Whatever the precise boundaries of the rule with respect to absolute liability for the acts of domestic animals while trespassing on land, we are satisfied that the present case is not a proper one for the imposition of absolute liability. While Brownie was presumably a trespasser in strict legal theory, this was not the case of a horse permitted to run loose and straying into the schoolyard in the usual manner of stray animals. Here the defendant properly restrained his horses with a fence which met the statutory requirements for "legal and sufficient fences" (sec. 90.02 (1), Stats.). Brownie did not invade the schoolyard in the traditional manner of an escaped or unconfined animal; he merely put his head over the fence.

The common-law rule of absolute liability is based on the duty of the owner or possessor of animals to confine them so that they do not roam at large on other people's property. Thus it was held not to apply where the animal escapes, without negligence on the part of its custodian, while being lawfully driven along a highway. *Metropolitan Casualty Ins. Co. v. Clark* (1911), 145 Wis. 181, 129 N. W. 1065. In that case the court explained the rule of absolute liability as follows (p. 183):

"A rule of the common law which has come down to us practically unchanged made it the duty of every man to keep his cattle (herbivorous domestic animals) within the limits of his own possessions. If he failed to so keep them he failed in duty, and when they strayed upon the land of another the owner was chargeable with a trespass. Nor did his liability for the mischief done by them depend in any degree upon

his personal fault, since, if the cattle escaped from his custody notwithstanding due care on his part, his responsibility for the injury committed by them was the same that it would have been had he voluntarily permitted them to roam at large."

In the instant case defendant performed the duty of keeping his horses confined within a fence approved by statute and custom. We consider that the rule of absolute liability regardless of negligence should not be extended to the type of animal trespass here involved, any more than to the case where the trespass follows the animal's escape while being driven along a public highway.

This decision is limited to the facts of the case before us, where the offender was a horse, the offense was a bite, the trespass occurred above and not on the land, and it is not shown that defendant knew or should have known or suspected that such an occurrence was likely to happen.

*By the Court.*—Judgment affirmed.

The following memorandum was filed June 2, 1959:

HALLOWS, J. (*on motion for rehearing*). The appellant calls our attention to an error in the opinion in which we stated that the fence separating the pasture from the school grounds consisted of woven wire with three strands of barbed wire. The opinion is corrected in that respect to state the fence between the school grounds and the pasture was of mesh wire about four feet seven inches without barbed wire and was installed by the school board. The fence described in the opinion surrounded the pasture except along the schoolyard fence. This fence likewise meets the statutory requirements for legal and sufficient fences. Sec. 90.02 (1) (d), Stats.

The appellant contends that since the defendant was not the owner of the school fence he did not have a legal and sufficient fence at the place where the horse reached over the fence and bit the ear of the plaintiff. The ownership of the fence here is immaterial since in fact the fence served to close the defendant's pasture along the school grounds and under the facts the horse would have thrust his head over the fence no matter who owned it.

The rest of the appellant's brief reargues issues which were argued and considered by the court and which we believe were correctly disposed of on the appeal.

Since the respondent did not file a brief on rehearing he is not entitled to costs.

*By the Court.*—Motion for rehearing is denied without costs.