JAMES F. HOLDEN v. ANDREW J. SHATTUCK.

*Highways. Restraint of Domestic Animals. Negligence.*

The owner of lands through which a highway is established, retains the fee of the soil embraced within its limits, with the full right to its enjoyment in any manner not inconsistent with the enjoyment of the easement by the public for the purposes of a highway; and this right is exclusive against all other persons.

Under the recent statutes in this state, the law is, as it ever has been in England, that the owner is under no obligation to fence his land along the highway; the obligation in this respect being limited to his duty to restrain his cattle from trespassing upon his neighbors.

Therefore, the mere fact of a domestic animal being in the highway, unattended by its owner or servant, cannot be regarded as unlawful, or a breach of duty, rendering the owner liable for injurious consequences that may accidentally flow therefrom.

In order to constitute the presence of such animal in the highway adjoining the owner's land, wrongful on the part of the owner, it should appear that the circumstances and occasion, or that the character and habits of the animal, were known to the owner to such an extent as to warrant the finding of the fact of carelessness on the part of such owner, in reference to the convenience and safety of the traveling public.

CASE. The declaration alleged that the defendant carelessly and negligently suffered his horse to be at large in the highway, whereby the horse of the plaintiff, which was traveling along the same highway, harnessed to a wagon, was, by the misconduct of the defendant's horse, rendered so restive, frightened, and unmanageable, that he ran out of said highway, and was greatly damaged. Plea, the general issue, and trial by jury, May term, 1860, REDFIELD, Ch. J., presiding.

On trial, the plaintiff gave evidence tending to prove that he was traveling from Springfield to Mount Holly, with a three years old colt harnessed to a wagon, and that while passing along the highway, in the town of Weston, he saw the defendant's horse upon the roadside, feeding upon oats across the fence; that as he came opposite to the horse of the defendant, it suddenly turned and reared and came at the plaintiff's horse as though about to jump on to him, and made demonstrations as though to bite and kick the plaintiff's horse, and then turned and

Holden *v.* Shattuck.

came into the highway near to, and ahead of, the plaintiff's horse and trotted ahead for some ten or twelve rods, and then commenced running; that the plaintiff's horse endeavored to keep up, and broke into a run, but the plaintiff restrained it after running five or six rods; that sixty-five rods from where the defendant's horse first turned upon the horse of the plaintiff, the defendant's horse turned off the highway, on to a road leading therefrom, at right angles, and after passing about twelve rods, stopped; that the plaintiff's horse wanted to follow and attempted to do so, but the plaintiff succeeded in driving along the highway without difficulty, but that the horse, after passing the cross road, was excited and inclined to go fast, and frequently turned its head and looked back, and that on arriving at a small sluiceway in the road, two hundred and two rods from where the defendant's horse turned off, it suddenly flung its head round, sprang forward, kicked and broke the shafts of the wagon, and ran, cutting its legs and damaging the harness and wagon. The plaintiff's testimony also tended to show that his horse was three years old, well broken, and had no unsteady or bad tricks, and that the defendant's horse was in the highway with his knowledge and consent, and was high spirited and accustomed to bite and quarrel with other horses.

The defendant's evidence tended to prove that the plaintiff's horse had before kicked when driven in a wagon, and was not well broken and steady, but was shy about passing bridges, and afraid of boards or new timber beside the road; that on the day in question, the defendant turned his horse into his pasture, where he saw it but a short time before it was so found in the highway, and that the pasture was a safe place to put and keep the horse; that the horse was peaceable and not accustomed to jump, and that the defendant did not know the horse was in the highway until just as the plaintiff came along, at which time the defendant was in a hay field some two hundred rods distant. The defendant's evidence further tended to show that his horse, when opposite the plaintiff, made no such demonstrations as the plaintiff's evidence tended to show, but that it turned quietly into the road ahead of the plaintiff's horse and trotted along in advance until it came to a little rise in the highway, when it fell

23

into a walk, and so continued, until, arriving at the top, it turned on to said cross road, and cantered about twelve rods and stopped, and did not again return to the highway ; that the plaintiff's horse walked a portion of the way after passing the cross road, and before arriving at the sluice way, where the injury occurred, and that after passing the cross road the plaintiff had no trouble in managing his horse until it suddenly started upon the sluice way.

The defendant requested the court, to charge the jury as follows :

1. That if the defendant exercised ordinary care and diligence in the keeping of his horse, and that if it was out on the day of the accident without his knowledge, the plaintiff could not recover, although the accident was occasioned by the defendant's horse

2. That if the accident was the result partly of the misconduct of the defendant's horse, and partly of the misconduct of the plaintiff's horse, the plaintiff could not recover, although the defendant knowingly permitted his horse to be at large in the highway.

3. That the defendant's horse passing along the highway, ahead of the plaintiff's horse, whether trotting or running, or both, was not such misconduct as would entitle the plaintiff to recover, although the defendant knowingly permitted his horse to be at large in the highway.

4. That if the accident was not the necessary and immediate result of the misconduct of the defendant's horse, the plaintiff was not entitled to recover, although the defendant knowingly permitted his horse to be at large in the highway.

5. That if the accident was not the necessary result of the misconduct of the defendant's horse, the plaintiff is not entitled to recover, although the defendant knowingly permitted his horse to be at large in the highway.

6. That if the accident was not occasioned by the misconduct of the defendant's horse, the plaintiff is not entitled to recover, although the defendant knowingly permitted his horse to be at large in the highway.

7. That if the defendant's horse was guilty of misconduct when the first turned from where he was eating oats beside the road, and not afterwards, and the accident happened after the plaintiff

had traveled two hundred and sixty-seven rods from that place, that then the plaintiff could not recover, although the defendant knowingly permitted his horse to be at large in the highway.

8. That if the plaintiff traveled two hundred and two rods after the defendant's horse left the highway on which he (plaintiff) was traveling, and before the accident, that the plaintiff could not recover, although the defendant knowingly suffered his horse to be at large in the highway.

9. That if the plaintiff's version of the transacti on was true, the plaintiff was not entitled to recover, although the defendant knowingly suffered his horse to be at large in the highway.

The court charged the jury in compliance with the defendant's first request, except adding the words " or fault," next after the word " knowledge " They also charged the jury according to the defendant's second, fourth, fifth and sixth request.

In regard to the third request, the court told the jury that it was matter of fact for them to determine, whether the defendant's horse conducted in such a manner as to render the plaintiff's horse excited and unmanageable, to such an extent as. in spite of all the plaintiff's efforts, he possessing and exercising reasonable and ordinary skill, care and prudence, to produce the injury to the plaintiff's horse, harness and wagon, complained of, and that no precise rule of law could be given, as to what particular conduct of the defendant's horse would produce such a result. The jury were told, too, that if the plaintiff's horse, harness or wagon, were not reasonably safe to drive upon the highway, and such as prudent men would regard as ordinarily safe to be used in that way, and the accident was in any manner or degree attributable to such defects, the plaintiff could not recover. But that if the jury were satisfied the defendant's horse was at large with his knowledge, or through his want of ordinary care in restraining him, and his meeting the plaintiff's horse so excited it as to be the direct and immediate cause of the injury complained of, before the plaintiff, in the exercise of ordinary care and skill, could quiet or control it, the plaintiff would be entitled to a verdict.

In regard to the seventh, eighth and ninth requests of the defendant, the court told the jury that it was matter of fact for

them to determine, whether the plaintiff's horse did in fact become quiet and manageable after meeting with the defendant's horse, and before the accident, in the manner the defendant's testimony tended to show ; if so they should give a verdict for the defendant, since the natural inference would then be that some other exciting cause intervened to produce the injury. The jury were told also, that there was a natural improbability resulting from human experience that such an accident should occur from meeting another horse, after the plaintiff's horse had gone more than half a mile ; but it was possible the excitement and terror might continue until it resulted in the accident and injury complained of, and if they so judged from all the evidence and probabities in the case, they would so find.

The defendant excepted to the refusal to charge as requested, and to the charge as given in relation to the points involved in such request.

Verdict and judgment for the plaintiff.

*Andrew Tracy*, for the defendant.

I. The defendant was bound to exercise ordinary care and diligence only in keeping his horse.

II. The charge, as given, in answer to the defendant's first request, held the defendant to a higher measure of diligence.

It required him, in effect, to absolutely restrain his horse, else the words " or fault," are without meaning.

III. The charge, in answer to the third request, was erroneous. It makes the defendant liable, though his horse had been at the time standing still or grazing beside the highway, if the plaintiff's horse was thereby excited and so the injury happened.

This would make the defendant liable without any fault on the part of his horse, except that it was a horse.

IV. It was error to instruct the jury that the defendant's ninth request presented only a question of fact, or " fact and construction," if the word construction, as used here, means anything. 16 U. S. Dig. 468, §35.

V. The law is, as claimed by the defendant, upon the facts stated in his several requests, and the court should have charged in conformity therewith.

Holden *v.* Shattuck.

1. Because no action can be sustained upon such a state of facts. 15 Vt. 404, *Cogswell* v. *Baldwin.* 1 Chit Pl. 55. 13 Johns 339, *Vernon* v. *Sawyer.* 1 Bac. Ab. 118. 14 U. S. Dig. 9, §13. 2 Salkeld 662, *Bruxendie* v *Sharp.* 4 Camp. 198, *Beck and wife* v. *Dyson.* 5 Law and Equity 514, *Hudson* v. *Roberts.*

2. Because the defendant had a lawful right to let his horse run in the highways, at least upon his own lands.

By the common law horses are commonable. 2 Bac. Ab. 261, Tit., of common appendant.

There is no statute restraining them, except as to villages.

Chap. 15, Comp. Stat. 122, sec. 81, authorizes towns to make by-laws restraining any animals from running at large, but there is no evidence in the case that the town of Weston ever acted upon the subject, or made any by-laws.

3. The declaration alleges that the defendant was bound to restrain his horse.

This was a material allegation, and proof of it was essential to the plaintiff's right of recovery under his declaration.

The case is destitute of such proof.

*J. F. Deane,* for the plaintiff.

BARRETT, J. The declaration in this case counts upon the neglect, on the part of the defendant, of his duty to restrain and take care of his horse, and keep him from being at large in the highway, through which neglect, the said horse, being at large, with great force and violence started, and ran about and before the horse of the plaintiff, which thereby became restive and frightened and ungovernable, and ran along said highway, and by reason of such fright ran out of said highway, and became damaged, etc.

There is no averment of any vicious quality or habit in the defendant's horse, known to the defendant. The only fault alleged against him consists in letting his horse, through negligence and carelessness, be in the highway, in violation of his duty to restrain and keep him out of the highway. The residue of fault charged consists in the conduct of the horse in running about and before the horse of the plaintiff, as he was driving along said highway.

Holden *v.* Shattuck.

. The evidence shows that the defendant's horse came out of his lot through a door-way, that, as the jury have found, got open through the carelessness of the defendant, and was feeding from the road side of the fence on the oats of the defendant growing on the other side, when the plaintiff was driving along the highway lying through the defendant's farm. It also shows that all the faulty conduct of the defendant's horse, as charged in the declaration, occurred along the highway within the limits of the defendant's adjacent land. It contains nothing tending to show that the defendant had any knowledge of any vicious or roguish trick or propensity in the respect complained of, or indeed, that he had any such propensity or trick, save that on a single prior occasion, when he happened to be in the highway, he pranced about, as another horse was passing along.

The whole trial, including the charge of the court, proceeded upon the assumption that the defendant had no right to have or permit his horse to be loose in the highway, and that if he was there through the carelessness of the defendant, he, the defendant, was liable in law to respond any damage that should be caused thereby.

If this is the true view of the subject, we should have no great difficulty in upholding the verdict under the charge in its relation to the evidence given on the trial.

Under the last of the series of requests made by the defendant for a charge, the question is directly raised, whether the law, as to the duty of the defendant to restrain his horse from being in the highway, was warrantably assumed to be as was held by the county court, as the basis of the right of action set forth in the declaration.

It is too familiar to warrant debate, that the owner of land, through which a highway is established, retains the fee of the soil embraced within its limits, with the full right to its enjoyment in any manner not inconsistent with the enjoyment of the easement by the public for the purpose of a highway. He has the right to the herbage, and whatever else is of value, to any extent not infringing the proper maintainance and use of the public thoroughfare ; and this right is exclusive against all other persons. *Perley* v. *Chandler*, 6 Mass. 454. *Stackpole* v. *Haley*, 16 Ib. 33. *Jackson* v. *Hathaway*, 15 Johns. 447.

Holden v. Shattuck.

Under our more recent statutes the law now is in this state, as it ever has been in England, and other of the American states, that the owner of land is under no obligation to fence his own land along a highway. The obligation in this respect results only from his duty to restrain his own cattle from trespassing upon his neighbor. He may leave open his own land to the highway, and his cattle may enjoy the full range of the margin in devouring the herbage or in other pastimes, without trespassing upon anybody, and without giving any individual of the public any ground of complaint, unless he is guilty of some fault through which the enjoyment of the public easement is impaired.

It must be equally his right to let his cattle or horses be in the highway along through his land in case the same should be enclosed by side fences, subject to the same condition in favor of the easement to be enjoyed by the public. Avery v. Maxwell, 4 N. H. 36. It follows then, as matter of course, that the mere fact of a domestic animal, as a cow or a horse, being in the highway in this manner cannot be regarded as unlawful—a breach of duty—rendering the owner liable for all injurious consequences that may accidentally flow therefrom. Something more must exist in concurrence with that fact in order to predicate fault in the owner that will render him thus liable. If the animal have the character and habit of peaceableness and quietude it is impossible to say that there would be any breach of duty, at suitable times—as in the open day, and in the ordinary course of the use of highways in farming neighborhoods, to permit either by design or by accident, such animal to be loose in the highway within the limits of his own farm. There may be times and occasions when it would be a culpable fault so to do, and would subject the owner to such damage as might result therefrom. For instance, to permit animals to occupy the highway by night, with the likelihood of their lying down for their rest in the travel path, and by thus obstructing it, causing accident and damage. But in such cases, the question of fault would have to be submitted to the jury upon all the circumstances under proper instructions, as to the respective relative rights and duties of the landowner, and the public.

As before remarked, the only fault charged upon the defend-

ant as subjecting him to liability in this case, is the fact that he negligently and carelessly failed to restrain his horse from being in the highway ; all the rest is charged to the conduct of the horse itself, so being in the highway.

It is obvious that both must concur, in order, upon the plaintiff's own theory, to subject the defendant to the liability claimed.

If therefore, in the eye of the law, fault in the defendant cannot be predicated upon the mere fact of his horse being in the highway, it is obvious that there remains no sufficient ground for charging him with liability for the resulting damage. To hold the defendant thus liable upon the view in which the declaration was framed, and the case was tried, would seem to result in making him the absolute insurer against all casualties that should occur to travelers in consequence of his cattle or horses being in the highway for any other purpose or reason than merely that of using such highway as a thoroughfare.

Now we do not understand the law of the subject to visit such a responsibility upon the defendant. The right of the public to the enjoyment of the easement is unquestioned. The right of the land-owner to any use of the margin of the highway in any manner not inconsistent with that right of the public, is equally unquestioned. The mere fact of a horse or cow being in the highway, and upon the margin depasturing or standing, is, in itself, in no way inconsistent with the right of the public. Whether there by accident or design can make no difference in this respect. In order to constitute the being there of such animal wrongful on the part of the owner, it should appear that the circumstances and occasion, or that the character and habits of the animal were such as to show carelessness on the part of such owner in reference to the convenience and safety of travelers on such highway ; and only in this way do we think he should be subjected to liability for accidental injury and damage that may ensue in such a case.

Much is said in the books and cases about its being unlawful to permit cattle to run at large in the public highways ; but on examination, it will be found that such unlawfulness is asserted in reference to the rights of adjoining land-owners, who may claim entire immunity from the cattle of others even without any

fence against them along the highway.    We do not at present, as it is not necessary, undertake to say whether in this country persons may or may not let their cattle run at large and depasture along the margin of the road through another's land.  There has been a period when in this state no remedy could be asserted by suit for such an act ; and it has sometimes been intimated that it was a kind of local common law, that cattle might thus depasture.

This however, was when our statute required land-owners to maintain lawful fences on highways in order to entitle them to impound cattle that had passed from the highway on to their land.    That statute not now being in existence, it may admit of question whether we should not now regard ourselves as standing on the English common law on this subject.    But it is needless to discuss the subject in this direction.

The judgment is reversed and cause remanded.