Fox, Respondent, vs. Koehnig, Appellant.

Fox, by guardian *ad litem,* Respondent, vs. Same, Appellant.

*May 13—June 21, 1926.*

*Animals: Horse at large on highway: Negligence of owner: Collision with automobile: Proximate cause: Reasonable anticipation of injury: Liability of owner of domestic animal.*

1. Where separate and distinct actions have been combined for trial, a single notice of appeal from the separate judgments rendered is irregular; but a stipulation for the continuance of the case in the supreme court constituted a waiver of the defects in the appeal proceedings under sec. 269.51, Stats. p. 530.

2. At common law, and in this state except as modified by the line-fence statute, it is the duty of the owners of animals to fence them in, rather than the duty of others to fence them out.  p. 531.

3. The liability of the owner for the damage resulting from trespass by his live stock is absolute, irrespective of his negligence, though he is not liable for every conceivable damage which the trespassing animals may commit.  p. 532.

4. The owner must take notice of the natural propensities of his animals, and is liable for the damages resulting therefrom or from any peculiar propensities of individual animals that have come to his attention.  p. 532.

5. By statute and by the common law it is not unlawful for domestic animals to be at large on public highways.  p. 534.

6. In order that a want of ordinary care constitute a proximate cause of an injury, it must be of such character and occur under such circumstances that an ordinarily careful and prudent man might reasonably have foreseen the injury, and must have a reasonably close, physical, and causal connection with the injury.  p. 536.

7. In this case the defendant's want of ordinary care, if any, in fencing in his horse, was not a proximate cause of plaintiff's injury, which occurred when plaintiff's automobile struck defendant's horse, which was loose on the highway and was obscured by a cloud of dust.  p. 543.

8. The doctrine of negligence as applied to an owner of animals requires only the anticipation of damages which may result from the natural traits or from the known propensities of individual animals.  p. 543.

APPEAL from a judgment of the circuit court for Fond du Lac county: CHESTER A. FOWLER, Circuit Judge. *Reversed.*

Action to recover damages for injuries sustained by reason of the collision of an automobile with defendant's horse on a public highway. On the evening of May 2, 1924, about 9 o'clock p. m., an automobile owned by the plaintiff, *Jacob P. Fox,* was being driven along a public highway in Fond du Lac county by his son, Raymond Fox. His daughters *Adeline* and Viola were also occupants of the automobile. While being so driven, the automobile collided with defendant's horse, which was loose and unattended on the highway, causing damage to the car and injuries to the plaintiff *Adeline.* The plaintiff *Jacob P. Fox* brought action to recover for the damages to the car and the plaintiff *Adeline Fox* brought action to recover damages resulting from her personal injuries. The two actions were combined for the purpose of trial, were briefed and argued together in this court, and will be disposed of in a single opinion.

It appears that the defendant's horse, a colt about three years old, had been grazing on the highway during the day of May 2d; that in the evening, after supper, defendant secured the colt and put it in his barnyard, which was inclosed by a fence. After the defendant had retired for the night the colt escaped from the barnyard and wandered upon the highway. Just before the accident plaintiff's automobile, driven by his son, met two or three cars, causing a cloud of dust to arise which greatly obscured the vision of the driver and occupants of the car. So much of the evidence as may be necessary for the disposition of the case will be detailed in the opinion.

The jury found that the defendant did not know that the horse was on the highway at the time of the collision, but that its presence on the highway was due to a want of

ordinary care on the part of the defendant, which want of ordinary care was the proximate cause of the collision, and that there was no want of ordinary care on the part of the driver or *Adeline Fox*. Upon this verdict judgments were rendered in favor of the plaintiffs, from which judgments the defendant appeals.

For the appellant there was a brief by *Reilly & O'Brien* of Fond du Lac, and oral argument by *J. E. O'Brien*.

*T. L. Doyle* of Fond du Lac, for the respondents.

OWEN, J. These actions were separate and distinct actions. They were combined for the purposes of trial. A judgment was entered in each action. The notice of appeal to this court from said judgments was a single notice. It was entitled in both actions and gave notice that the defendant appealed "from the judgments rendered by the above named court herein entered on the 2d day of December, 1924, in favor of the plaintiffs and against the defendant for the sum of $520.59 damages and costs, and $2,044.55 damages and costs, and from the whole thereof." The plaintiffs have made separate motions to dismiss the appeal.

The notice of appeal is irregular. There should have been two notices served, entitled in each action, giving notice of appeal from the judgment in the action so entitled. However, it does not follow that the appeal should be dismissed. Sec. 269.51, Stats., provides that—

"Whenever an appeal is attempted to be taken . . . and return is duly made . . . the respondent shall be deemed to have waived all objections to the regularity or sufficiency of the appeal . . . unless he shall make such objection by motion to dismiss such appeal before taking or participating in the taking of any other proceedings in said appellate court."

This case appeared as No. 4 on the calendar for the August term of the year 1925 of this court. There was filed

in this court on September 21, 1925, a stipulation continuing the case over the term, signed by the attorneys for the respective parties, and pursuant to such stipulation the case was continued over the term. The signing of this stipulation resulted in continuing the case over the term, and constituted a waiver of the defects in the appeal proceedings under the provisions of sec. 269.51, Stats. The motions to dismiss the appeal are denied without costs.

The principal contention made by appellant is that the negligence of the defendant in failing to maintain a sufficient fence to confine his horse to the barnyard and thus prevent his straying upon the highway is not the proximate cause of the damage. It is contended that the proximate cause of the damage is the negligence of the driver of the automobile in driving through a cloud of dust at such a rate of speed that he was unable to stop in time to avoid the collision with the horse. No doubt the question whether the negligence of the defendant was the proximate cause of the damage is a vital question in the case, and we think this is true entirely separate and apart from the question whether the conduct of the driver of the automobile was the proximate cause of the damage.

It would seem that an orderly treatment of the case should be premised upon a consideration of the duties resting upon the owners of live stock and other domestic animals with respect to their keeping or confining them within or upon their premises, and the liabilities attaching to such owners when their animals stray therefrom. It is well settled that at common law it is the duty of the owners of such animals to fence them in, and that no duty rests upon their neighbors to fence them out, and the owner of animals is liable for their trespasses upon the lands of another whether the lands trespassed upon are inclosed or not. 1 Thompson, Comm. on Neg. § 938; 3 Corp. Jur. 125. While in some of the states, particularly in the grazing states, this rule has been modified by statute imposing the duty upon the owners

of lands to protect their lands from the trespasses of live stock by maintaining fences, the common-law rule was early adopted in this state and still obtains, except as modified by our line-fence statute.  *Stone v. Donaldson,* 1 Pin. 393; *Harrison v. Brown,* 5 Wis. 27; *Walls v. Cunningham,* 123 Wis. 346, 101 N. W. 696.

The liability of the owner for damage resulting from trespasses committed by his live stock upon the lands of his neighbor is absolute, and depends in no degree upon the question of his negligence.   But the owner is not liable for every conceivable damage which his trespassing animals may commit.   It is well settled that he must take notice of the natural propensity of cattle.   He is liable only for the damages resulting from the natural propensities of his animals, and from such peculiar propensities of individual animals as have come to his attention.   It is a well-known propensity of live stock, such as horses, cattle, sheep, and other domestic animals, to graze upon, trample down, and destroy grass and other growing crops.   For such damage the liability of the owner is absolute.   If he have a vicious horse that is accustomed to kick, or a bull that is given to assault upon others, and he has notice of these vicious tendencies, he must be held to anticipate that damages may result from these vicious tendencies if they escape from his own inclosure.   But, as said in Cooley on Torts at page 403:

"There are other mischiefs which may be committed by domestic animals that one is under no obligation to anticipate and guard against, because they are not the result of a general propensity, but are committed, if at all, by exceptionally vicious individuals of the particular species of animals.   Thus, though every horse will roam into neighboring fields if not restrained from doing so, it is only in rare and exceptional cases that a horse will attack and injure those who come near him.   Therefore, while the owner should anticipate and protect against trespasses on lands

by his horses, he is under no moral obligation to anticipate that a horse in which no such disposition has been discovered will suddenly make an assault upon and kick and bite some passer-by who chances to come within his reach. For this reason the keeper of a domestic animal is not in general responsible for any mischief that may be done by such animal which was of a kind not to be expected from him, and which it would not be negligence in the keeper to fail to guard against."

While the liability of the owner of domestic animals for their trespasses upon the lands of his neighbors is well settled, the liability of the owner for damages committed by his animals while straying upon the highway is not so well settled. In many states it is held that the owner of a horse running at large upon the highway is liable for damage committed by such horse, whether vicious or not, or known by the owner to be vicious. This seems to be true in New York, Pennsylvania, Massachusetts, Maine, and perhaps other states. Many cases to this effect are cited upon the brief of counsel for respondents, such as *Flesch v. Schlue,* 194 Iowa, 1200, 191 N. W. 63; *Healey v. P. Ballantine & Sons,* 66 N. J. L. 339, 49 Atl. 511; *Lyman v. Dale,* 156 Mo. App. 427, 136 S. W. 760; *Hardiman v. Wholley,* 172 Mass. 411, 52 N. E. 518; *Dickson v. McCoy,* 39 N. Y. 400. To these cases may be added *Goodman v. Gay,* 15 Pa. St. 188; *Decker v. Gammon,* 44 Me. 322; *Baldwin v. Ensign,* 49 Conn. 113; *Manthey v. Rauenbuehler,* 71 App. Div. 173, 75 N. Y. Supp. 714. It is believed, however, that the decisions in these cases rest upon the ground that it is unlawful for horses and other animals to stray unattended upon the highway, and the doctrine that the owner is liable for all damage committed by such animals when in a place where they had no right to be, is applied. In some of the cases it appears that either state statutes or village ordinances make it unlawful for the owner of live stock to permit the

same to run at large upon the highway.   In others it is held to be negligence *per se* to permit horses and cattle to run at large on public streets of populous cities or villages.

In *Leonard v. Doherty,* 174 Mass. 565, 55 N. E. 461, the owner of swine running at large upon the highway was held liable for damages caused by the swine in scaring horses traveling on the highway.   In order to reach that conclusion, however, the court considered it necessary to find some statutory provision prohibiting animals from running at large on the highway.   It was considered that certain statutes of that state authorizing field drivers to take up cattle running at large and not under the care of a keeper,. rendered unlawful the presence of such animals upon the highway.

In *Decker v. McSorley,* 111 Wis. 92, 86 N. W. 554, the owner of a horse running at large on the streets of the city of La Crosse was held liable for the damages resulting from the death of a boy due to a kick from the horse while so running at large.   The liability, however, was predicated upon an ordinance of the city of La Crosse prohibiting horses from running at large upon the streets of the city.

It seems well settled that at common law it was not unlawful for horses and other domestic animals to run at large upon public highways.   *Jones v. Lee,* 28 T. L. Rep. 92; *Heath's Garage v. Hodges,* 32 T. L. Rep. 134; *Cox v. Burbridge,* 106 E. C. L. Rep. 430; *Zumstein v. Shrumm,* 22 Ont. App. Rep. 263; *Stone v. Kopka,* 100 Ind. 458; *Brady v. Straub,* 177 Ky. 468, 197 S. W. 938; *Holden v. Shattuck,* 34 Vt. 336; *Klenberg v. Russell,* 125 Ind. 531, 25 N. E. 596.

In this state there is no statute which directly prohibits live stock from being at large upon the highways, except sec. 172.01, which prohibits stallions, bulls, rams, and boars from running at large, and makes the owner of such animals liable for all damages done by such animals while so at large.   The clear inference from this provision is that it

Fox v. Koehnig, 190 Wis. 528.

was the legislative understanding that in the absence of such statute it was not unlawful for the animals therein mentioned to run at large, nor was the owner liable for all damage done by said animals while so at large prior to the enactment of this statute. The further inference is that the legislature did not intend to prohibit any animals except those expressly specified from running at large.

We secure a further glimpse of the legislative policy from the provisions of sec. 170.01, which provides:

"No stray, except horses and mules, shall be taken up by any person not a resident of the town in which it is found nor unless it is found upon land owned or occupied by him."

The provisions of this section confine within narrow limits the right of individuals to take up animals running at large. First, the person restraining them must be a resident of the town in which the animal is found; and second, it must be found upon land owned or occupied by him. True, the statute does not apply to horses or mules. The reason for making an exception of horses and mules is not wholly apparent. But it is not improbable that that provision was inserted more for the protection of the owners of such animals because of their wandering habits and their ability to stray further from home, than it was to make unlawful their running at large. Then we find the further provision contained in sub. (3), sec. 60.18, which authorizes town meetings to make by-laws "to restrain cattle, horses, sheep, swine and other animals from going at large on the highways." This provision is cumulative, if not conclusive, evidence that the legislature did not regard it as unlawful for such animals to be at large upon the highways of this state, and that the legislative policy left it to the towns to prohibit such animals from running at large.

These statutory provisions, considered in connection with the common law upon the subject, make it plain that it is not unlawful in this state for domestic animals to be at large upon our highways. It is a matter of common knowl-

edge that in the early days in the history of this state, and at all times in the partially settled districts as the state developed, it was quite customary for cattle to run at large, and evidently there has been no disposition on the part of the legislature to discourage or suppress that custom.

The liability of plaintiff in this case, therefore, cannot be predicated upon the fact that the horse in question was unlawfully upon the highway. His liability, if any, must rest upon the ordinary principles of negligence. This is in accordance with what is said in 1 Thompson, Comm. on Neg. § 849, where the author says:

"The tendency of the modern law to assimilate the liability of the owner of domestic animals for injuries committed by them to *negligence* in all cases, without reference to proof of a knowledge of vicious propensity in such animals, is illustrated in a large class of holdings, some of them ancient, which, however, relate chiefly to damages done by escaping horses, cattle, etc. The result of these holdings may be substantially stated to be that the liability of a keeper of horses, cattle, etc., for allowing them to escape upon the public streets, in case they there do damage to travelers or others lawfully upon the streets, does not rest upon any conception as to his knowledge or ignorance in respect of the vicious character of the animals, but rests upon the question whether the keeper was guilty of *negligence* in permitting them to escape. And here the same rule in regard to what is and what is not negligence obtains as in most other situations. . . . The degree of care which the law requires depends upon the circumstances of each case."

Even if the defendant were guilty of a want of ordinary care in failing to maintain a fence sufficient to keep his horse within his barnyard, it must further appear that such want of ordinary care was the proximate cause of the injury, and in order to constitute such proximate cause such want of ordinary care must be of such a character, or occur under such circumstances, that an ordinarily careful and prudent man may reasonably foresee that an injury to another may probably follow therefrom. *Bell L. Co. v. Bay-*

*field T. R. Co.* 169 Wis. 357, 172 N. W. 955. Further, there must be a reasonably close, physical, causal connection between the negligence and the injury claimed as the result thereof so that it can be seen that but for the negligence the injury would probably not have resulted. *Ibid.*

The jury found that the insufficiency of the barnyard fence was the proximate cause of the damage. The question is whether the verdict in this respect can be sustained. In our consideration of this question we should have in mind the nature of the accident or collision and the manner in which it occurred. Raymond Fox, the driver of the car, testified:

"There was a car on top of the hill and one at the foot of the hill, and just as I was going to go by this car there was a horse there about two feet ahead of my car, in a cloud of dust. And when I see this horse, I swung my car to the left trying to dodge it, but the horse came so fast that it run right into me with the shoulder. The horse must have hit the front door and the head came through the wind-shield. I was driving between eighteen and twenty miles an hour. Those automobiles had their lights lit at the time. On the top of the hill, east of the point of accident, I met one car. It is more of a grade than a hill. And there was another one that I met with its lights lit a little bit west of there. The accident happened just after I met and passed the last of these two cars. The lights on my automobile were lit at the time. The roads there were dusty at the time. The horse came from the bank on the side of the road, on the north side. When I saw it, it was coming southeast, kind of catercornering, running, just a short distance ahead of my car. When I saw it I swung my car to the left."

*Adeline Fox* testified:

"As I came along there just before the accident I didn't have the least idea there was a horse or anything in the roadway. I might have been looking ahead, but I didn't notice anything whatever. All that I remember is that our car made a sudden turn toward the left and I saw the left side of the horse's head coming this way in the wind-shield.

The horse was on the right side of our car. The left side of his head came up against our wind-shield and shattered the glass and it flew."

Viola Fox, the other occupant of the car, testified:

"Well, I saw the horse in the cloud of dust about two feet ahead of our car. Then my brother turned the car to the side, to the south, and just at that minute the horse crashed into the wind-shield, and the horse's head went through the wind-shield, and the rest of the horse's body came around the right side of the car where I was sitting, and struck the car hard."

The occurrence was certainly a most unusual one, and cannot be attributed to the natural propensities of the horse There is no suggestion in the record that the horse was possessed of a capricious disposition, by reason of which an occurrence such as this should have been anticipated Any reasonable anticipation of this damage, or any injury resulting to any one by reason of the presence of the horse in the highway, cannot therefore be attributable solely to the natural propensities of the horse, and it .would seem that if the owner of the horse is liable for the damages sustained by plaintiffs by reason of this collision, to use the language of the Vermont court in *Holden v. Shattuck,* 34 Vt. 336, at p. 344, "to result in making him the absolute insurer against all casualties that should occur to travelers in consequence of his cattle or horses being in the highway for any other purpose or reason than merely that of using such highway as a thoroughfare." Such a conclusion, however, is contrary to all the authorities coming to our attention where the running at large of domestic animals upon the highway is not prohibited by law.

Thus in *Brady v. Straub,* 177 Ky. 468, 197 S. W. 938, it was held that one who permits his horse to run at large on a city street is not liable for injury inflicted by its kicking a child unless he knew, expressly or impliedly, that the

animal was vicious, or unless he had violated some law in turning the animal loose.

In *Holden v. Shattuck, supra,* it was held that the "mere fact of a domestic animal being in the highway, unattended by its owner or servant, cannot be regarded as unlawful, or a breach of duty, rendering the owner liable for injurious consequences that may accidentally flow therefrom."

In *Klenberg v. Russell,* 125 Ind. 531, 25 N. E. 596, it was held that the common law was in force in that state except so far as domestic animals were permitted to run at large by the board of commissioners, and it therefore became the duty of the owner to keep them confined to his own premises. It was held, however, that the owner of a domestic animal was not liable because of a negligent failure to keep it confined on his own premises, except for the consequences which may be anticipated because of its well-known disposition and habits, unless it is possessed of a vicious disposition, of which he had notice.

In *Zumstein v. Shrumm,* 22 Ont. App. Rep. 263, it was held that the owner of a turkey-cock which without negligence of the owner strayed upon the highway contrary to a by-law of the municipality was not liable for damages resulting from a horse taking fright and running away at the sight of the bird acting as turkey-cocks usually do.

In *Heath's Garage v. Hodges,* 32 T. L. Rep. 134, it appeared that some sheep belonging to the defendant, owing to an inadequate fence, strayed out of a field in his occupation onto a highway, and when the plaintiff's motor-cab was being driven along the highway, in daylight, at sixteen to twenty miles an hour, one of the sheep dashed out suddenly from the side of the road and collided with the steering apparatus, the result being that the cab was overturned and damaged. In an action by the plaintiffs against the defendant to recover the amount of the damage, the judge at the trial held that the defendant was liable on the ground

either of negligence or of a nuisance.  Upon appeal it was held that, assuming that there was evidence of negligence or a nuisance, nevertheless it was not the proximate or effective cause of the damage, and the damage was not its natural consequence, but the cause was either the driver's failure to avoid the sheep or an act of the sheep which the defendant, as a reasonable man, would not anticipate, and therefore the defendant was not liable.

In *Hadwell v. Righton,* 23 T. L. Rep. 548, it appeared that fowls belonging to the defendant, who lived alongside a public road, strayed onto the road, and, being frightened by a dog belonging to another person, one of them flew against a bicycle which the plaintiff was riding on the road and damaged it.  It was held that the defendant was not liable, upon the ground that, assuming that the fowls were improperly on the highway, the negligence of the defendant, if any, of allowing the fowls to be there was not the direct cause of the damage, the direct cause being the act of the dog in frightening them.

In *Higgins v. Searle,* 25 T. L. Rep. 301, it appeared that defendant's sow, which had strayed onto a highway, jumped up from the side of the hedge as a horse and van were about to pass a motor car.  The horse was frightened by the sow and shied in front of the car, which then collided with the horse and van and a stone wall and was damaged. The jury found that the defendant was not guilty of negligence in allowing the sow to be on the road, but the plaintiff contended that one who allows his cattle to stray is liable in damages for any consequences that may happen from such straying.  The master of the rolls said:

"No doubt this was so, but liable to whom?  To the owner of the soil for damage done, but not for damages such as were claimed in this case; that contention was negatived by *Cox v. Burbridge,* 106 E. C. L. Rep. 430.  If authority were wanted on this point the law was very clearly stated by Mr. Justice Bray in *Hadwell v. Righton,* 2 K. B.

345, in a passage which he, the master of the rolls, approved of, and adopted for the present case, where the learned judge said, at p. 349: 'It was said that the fowl,' which had upset the cyclist, 'was trespassing. But the cases which were relied upon as showing that that would give a cause of action were cases in which the plaintiff was the owner of the soil on which the trespass was committed, and are consequently not in point, for here the cyclist had no interest in the soil of the highway.' "

In *Cox v. Burbridge,* 106 E. C. L. Rep. 430, a horse crossing on a highway kicked the infant plaintiff. There was no evidence to show how the horse got to the spot, or that the defendant knew he was there, or that the animal was at all vicious, or that the child had done anything to irritate it. Mr. Chief Justice ERLE said:

"The facts I take to be these: The plaintiff, a child of tender age, was lawfully upon the highway, and a horse, the property of the defendant, was straying on the highway. As between the owner of the horse and the owner of the soil of the highway or of the herbage growing thereon, we may assume that the horse was trespassing; and, if the horse had done any damage to the soil, the owner of the soil might have had a right of action against his owner. So it may be assumed that, if the place in question were a public highway, the owner of the horse might have been liable to be proceeded against under the Highway Act. But in considering the claim of the plaintiff against the defendant for the injury sustained from the kick, the question whether the horse was a trespasser as against the owner of the soil, or whether his owner was amenable under the Highway Act, has nothing to do with the case of the plaintiff. I am also of the opinion that so much of the argument which has been addressed to us on the part of the plaintiff as assumes the action to be founded upon the negligence of the owner of the horse in allowing it to be upon the road unattended, is not tenable. To entitle the plaintiff to maintain the action it is necessary to show a breach of some legal duty due from the defendant to the plaintiff; and it is enough to say that there is no evidence to support the affirmative of the issue that there was

negligence on the part of the defendant for which an action would lie by the plaintiff. The simple fact found is that the horse was on the highway. He may have been there without any negligence of the owner; he might have been put there by a stranger, or might have escaped from some inclosed place without the owner's knowledge. To entitle the plaintiff to recover, there must be some affirmative proof of negligence in the defendant in respect of a duty owing to the plaintiff. But, even if there was any negligence on the part of the owner of the horse, I do not see how that is at all connected with the damage of which the plaintiff complains. It appears that the horse was on the highway, and that, without anything to account for it, he struck out and injured the plaintiff. I take the well-known distinction to apply here, that the owner of an animal is answerable for any damage done by it, provided it be of such a nature as is likely to arise from such an animal, and the owner knows it. Thus, in the case of a dog, if he bites a man or worries sheep, and his owner knows that he is accustomed to bite men or to worry sheep, the owner is responsible; but the party injured has no remedy unless the scienter can be proved. This is very familiar doctrine; and it seems to me that there is much stronger reason for applying that rule in respect of the damage done here. The owner of a horse must be taken to know that the animal will stray if not properly secured, and may find its way into his neighbor's corn or pasture. For a trespass of that kind the owner is of course responsible. But if the horse does something which is quite contrary to his ordinary nature, something which his owner has no reason to expect he will do, he has the same sort of protection that the owner of a dog has; and everybody knows that it is not at all the ordinary habit of a horse to kick a child on a highway. I think the ground upon which the plaintiff's counsel rests his case fails. It reduces itself to the question whether the owner of a horse is liable for a sudden act of a fierce and violent nature which is altogether contrary to the usual habits of the horse, without more. The cases to be found in the books upon this subject are very numerous."

These authorities are very clearly in point upon the facts we have before us; indeed some of them are almost identical. In all of the cited cases the courts have applied the funda-

mental doctrine that the owner of domestic animals is liable for damages resulting from the propensities of the particular species, and from the vicious or mischievous propensities of individual animals. This is a doctrine that applies to animals generally, modified only by statutes relating to dogs, which make the owner liable for the first as well as the second bite. In other words, when applying the doctrine of negligence, it seems to be settled as a matter of law that the owner is bound to anticipate only such damages as result from the natural traits and habits of the animals, or from those unnatural traits and habits of the individual animal of which he has knowledge. As already stated, the conduct of the horse in running into the automobile in the instant case was a most unusual and unnatural occurrence. It was not the usual conduct of a horse. It was an accident not within the field of reasonable anticipation. It therefore follows that even if the defendant may have been guilty of a want of ordinary care in failing to maintain a more secure fence around his barnyard, his failure in such respect was not the proximate cause of the damages sustained by the plaintiffs.

*By the Court.*—Judgment reversed, and cause remanded with instructions to dismiss the complaint.