REGAN, Judge.
Plaintiff, Edward P. Ansardi, the owner and operator of a 1949 Mercury automobile, instituted this suit against the defendant, Charles S. Potter, endeavoring to *348 recover the sum of $445 for property, damage and other losses incurred .by him as a result of colliding with defendant’s cow on the night of March 6, 1951, at about nine o’clock p. m. in Louisiana State Highway No. 1, while driving at a speed of between fifty and fifty-five miles per hour in a southerly direction or towards -Pointe-a-la-Hache, Louisiana, in the Parish of Plaquemines.
Defendant answered and denied that he was guilty of any negligence in the premises and further asserted that he exercised every reasonable precaution required by law or prudence to preclude the, possibility that the cow would escape through the fenced enclosure maintained by him for the purpose of confining his stock. In the alternative, defendant pleaded the contributory negligence of plaintiff in that he was operating his automobile' at an excessive rate of speed, which made it impossible for him to maintain a proper lookout and to stop at night within the illuminated range of his headlights. Defendant then reconvened claiming the sum of $125 as the value of one Angus heifer approximately one year old, weighing about'four hundred pounds.
From a judgment in favor of plaintiff in the amount of $285, representing property damage to his automobile, and dismissing the suit in reconvention, defendant prosecutes this appeal.
The record reveals that plaintiff testified that on March 6, 1951, at about nine o’clock p. m., he was operating his automobile, accompanied by his wife, stepson and Louis Dureau, about fifty or fifty-five miles per hour in the right lane of Louisiana State Highway No. 1, towards Pointe-a-la-Hache, Louisiana; when he was about two hundred feet below the Wills Point Garage, a small black Angus heifer suddenly emerged, within five feet of his car, from the right or riverside of the highway and ran into the path thereof. The' cow was struck by the left front section of the car. In consequence of the collision he incurred property damage amounting to the sum of $285. Plaintiff further asserted that the following morning while speaking to defendant’s caretaker, the caretaker told , him “ * * * somebody left the gate open.”
The only other witness to testify on plaintiff’s behalf was his wife, who endeavored ' to corroborate his testimony relative to the manner in which the accident occurred.
‘ It is conceded that Louis Dureau was a passenger in plaintiff’s vehicle on this occasion, yet no reason appears in the record for his non-production as, a witness.
Three witnesses testified on behalf of the defendant on the focal point of the case,, and this testimony stands uncontradicted in the record. Frank B. Livaudais, Jr., a realtor, who initially sold the property to' defendant, Willie Stokes, a colored caretaker residing thereon, and the defendant.
Defendant testified that he had owned the property approximately six years, but did not reside thereon as he maintained his home in the City of New Orleans; he employed Willie Stokes as a caretaker and his duties principally consisted in caring for the cattle and ascertaining that they were confined within the fenced enclosure. He testified that the property “was fenced in about 1946 or 1947 with metal posts around the entire place. Along the front we have a woven wire fence about five feet high, then a six-inch steel strip on top of the post on , both sides on the metal post, with a five-strand barbed wire. * * * The gate had a cable on it * * * • fastened to the post, * * * to prevent it from opening.” He pointed out that the cattle had escaped through the gate on several occasions, then elucidated thereupon as follows “they have a shop there (a garage at Wills Point) that somebody runs and they repair cars and they come and use my gate (driveway) to turn around and go back to the shop. I believe twice before I complained to them — the shop and the grocery store — about bending my gate all up. It is a steel gate with wire. When you run into it with an automobile you bend it up. The *349 only time to. my knowledge tbey got out was through that broken gate about three times since I have owned this property."
Livaudais testified that defendant’s property -was “fenced throughout with metal posts across the front with a metal strip on top” and “across the fence was a knitted wire and the wire across was also barbed wire.” When requested to describe the gate the witness stated “a gate made of the same material with a metal barrier on top * * * and meshed inside with a metal wire. It was on two concrete columns in front of the entrance. * * * The gate was bound with a cable with a ring around it * * *. I boasted about the fence to everyone I had shown the place to.” He further stated that on the morning following ■ the accident, he visited defendant’s property and observed that the gate thereto had been -crushed in, obviously by some automobile having been driven or backed into it.
Stokes testified that it was his principal task, as caretaker, to maintain defendant’s cattle and to ascertain that they did not escape from the fenced enclosure. He related with reference to the front gate that “I checked it every morning and every evening before I went to bed.” He was positive that he had made his usual check of the gate the evening the accident occurred and found that it was securely locked at that time; he insisted that the cattle had never escaped through any part of the fence other than the gate. On the morning after the’ accident occurred, he discovered that the cattlé had escaped -from the enclosure and, after rounding them up and driving them back into the . fenced area he noticed that “the gate was crushed in, * * it looked like some .automobile backed into it and in someway the wire was broken out where we, had the three, braces * . * * it wasn’t completely open, but it had been bent up so they could pass on each side next to the iron bridge and pass right through it without any trouble.”
Plaintiff contends that defendant’s negligence was the proximate cause of the acr cident, which he enumerates as follows:
(a) That on the night of the accident defendant’s cow was roaming at large contrary to and in violation of the livestock ordinance adopted by the Police Jury of the Parish of Plaquemines on July 28, 1938, which was introduced in evidence.
(b) In violation of LSÁ-R.S. 3:2571 and LSA-R.S. 3:2851, which respectively provide :
“It shall not be lawful for horses, mules, cattle, hogs, sheep, or live stock of any description to go on the levees, or the space between the base of the levees and the drainage ditch, from and during the time that the water is against the levee * *
“It shall not be lawful for horses, mules, donkeys, or asses to go on the paved, black-topped and asphalt treated highways of the state system and the rights of ways therefor * *
(c) In not having the cow properly fenced in.
Defendant, in opposition thereto, insists that he was not guilty of any negligence in the premises; , -that he exercised . every reasonable precaution required by law or common prudence to preclude the possibility that the cow would escape through the substantial fence maintained by him for the purpose of confining his stock.
The only question posed for our consideration insofar as the main demand is concerned, is one of fact and that is whether the defendant was guilty of any negligence in erecting or maintaining the fence enclosing, his property and, if so, was this negligence.the proximate cause of the accident?
In Raziano v. T. J. James & Company, La.App.1952, 57 So.2d 251, 254 we had occasion to review and discuss almost the identical question- posed for our consideration by this case. In that case we said:
“Under the rules which emerged from the common law the owner of domestic animals possessed a duty which was absolute to keep them con *350 tained within his own premises and he was strictly liable for their trespass on another’s land if -he failed to do so. ‘Where my beasts of their own wrong without my will and knowledge break another’s close I shall be punished, for I am the trespasser with my beasts.’ 12 Hen. VII, Keilway. 3b Accord; McKee v. Trisler, 1924, 311 Ill. 536, 143 N.E. 69, 33 A.L.R. 1298; Drew v. Gross, 1925, 112 Ohio St. 485, 147 N.E. 757; Fox v. Koehnig, 1926, 190 Wis. 528, 209 N.W. 708, 49 A.L.R. 903. Therefore, the obligation rested on the owner of domestic animals to fence his stock in and no burden was imposed upon his neighbor to keep them out.
“The State of Louisianá has enacted no general statute forbidding the owners from indulging in the custom of allowing their stock to roam at large, but vests this power in the Police Juries of the respective parishes who may enact ordinances to accomplish the desired result. In this connection Article 2321 of the Louisiana Civil Code of 1870 is significant. It provides: ‘The owner of an animal is answerable for the damage he has caused^ * *
“It would, therefore, appear per se that Article 2321 would impose an absolute liability upon the owner of an animal, irrespective of the existence of any ordinance; however, that article has been interpreted as subject to the negligence or fault requirements of Articles 2315 and 2316 of the Civil Code. Tillman v. Cook, La.App.1941, 3 So.2d 230. This, interpretation is enunciated in Tripani v. Meraux, 1936, 184 La. 66, 165 So. 453, 455, wherein the opinion it is stated ‘although article 2321 of the Civil Code declares, unqualifiedly, that the owner of an animal is answerable for the damage he has done, the interpretation which has been- put upon this article, consistently, by this court, is that the owner of an animal is liable for damages done by the animal only in cases where the owner was guilty of some fault or negligence in his ownership or possession of the animal.’ A fortiori, the burden of proof is on the owner to show that he was without the slightest fault and did all that was possible to prevent the injury, Bentz v. Page, 115 La. 560, 39 So. 599; Damonte v. Patton, 1907, 118 La. 530, 43 So. 153, 8 L.R.A,N.S., 209, 118 Am.St. 384, 10 Ann.Cas. 862; Boudreau v. Louviere, La.App.1938, 178 So. 173. However, the. presumption of fault is a rebuttable one. Mercer v. Marston, 1923, 3 La.App. 97; Matthews v. Gremillion, La.App.1937, 174 So. 703.
“Several generations ago the courts of this Nation rejected the common law rule of strict liability growing out of animal trespasses; but as'various states of this Union .have become more populated and industrialized,: the tendency has- been to restore the rule of strict liability, either by state statute or local ordinance, for the reason that the need of such a law in the community outweighs the economic burden imposed upon the owners of animals.
******
“In the final analysis, it, therefore, ■ appears that the existence of an ordinance places an obligation upon the owner to contain his stock within a properly constructed enclosure.”'
In the Raziano case we found as a fact that the corral or enclosure was not substantial enough to confine the mule which escaped therefrom by virtue of having broken the fence.
A careful analysis of the record in the instant' case convinces us that defendant maintained a very substantial fence and gate enclosing his cattle. It was only in consequence of the negligence of some unknown operator of a motor vehicle, who having damaged the gate bn the night of the accident permitted this calf to escape therefrom and to roam upon the public highway.
The fact that the gate had been similarly damaged by unknown automotive vehicles *351 on several other occasions over a long period of time, which thus permitted the cattle to roam at large on one or two instances, did not of itself impose a greater obligation or liability upon the defendant than already existed. In addition to enclosing the property with a very substantial fence and gate, he provided a caretaker, who resided thereon and whose principal duties were to maintain both the cattle and their enclosure. The record shows that the caretaker was devoted to these tasks and performed them loyally.
In our opinion the defendant adequately discharged the obligation which the existing law had imposed upon him. We, therefore, believe that the defendant Hvas without the slightest fault and did everything that was reasonable, to prevent-the damage.
With respect to the reconventional demand we find no merit therein. We related hereinabove that when the plaintiff had reached a point in the highway, about two hundred feet below the Wills Point Garage, the heifer suddenly emerged from the right or riverside thereof and ran into the path of his car. When plaintiff initially observed the calf entering the highway his vehicle was approximately five feet removed from the heifer and, although he endeavored to avoid the impending collision his efforts, through no fault of his own, resulted in failure.
In the very recent case of Anderson v. Bendily, 1953, 66 So.2d 355 the Court of Appeal for the First Circuit, in considering a similar factual situation, was of the opinion .that when-an animal suddenly darts in front of- an automobile traveling on a highway and the animal is struck before the.operator thereof is afforded an opportunity to avoid the collision, the accident is unavoidable and therefore no liability áttaches to the opera-dor thereof.
For the reasons assigned the judgment appealed from insofar as the main demand is concerned, is' annulled, avoided and reversed and it is now ordered that there be judgment herein in favor of the defendant dismissing plaintiff’s suit. In all other respects the judgment appealed from is affirmed. Plaintiff to pay all costs.
Reversed in part and affirmed in part.