**C. E. HENNENFENT, Plaintiff and Appellant,**

**v.**

**Emanuel FLATH, Defendant and Respondent.**

**No. 7405.**

Supreme Court of North Dakota.

Oct. 30, 1954.

Ella Van Berkom, Minot, for appellant.

Robt. Vogel, Garrison, for respondent.

BURKE, Judge.

This action arose out of a collision between a motor vehicle driven by the plaintiff and an animal owned by the defendant. The collision occurred upon a public highway. In his complaint the plaintiff alleged that defendant, negligently, and in violation of the laws of the State of North Dakota, permitted cattle owned by him to run at large and that such negligence proximately caused injury and damage to the plaintiff's automobile in the sum of $549.92. He asked for judgment in that amount. Defendant answered denying any negligence on his part, alleging contributory negligence on the part of the plaintiff and counterclaiming for the value of the animal struck and killed by plaintiff's car. The issues in the case were tried to a jury and a verdict was returned for a dismissal of the action. Thereafter plaintiff moved for a new trial. This motion was denied and plaintiff has appealed from the order denying the motion.

There are five specifications of error. We shall first consider the specification that the verdict and judgment are contrary to the evidence. Upon this specification plaintiff's contention is that both defendant's negligence and lack of contributory negligence on the part of the plaintiff were established by the evidence as a matter of law.

The collision occurred upon Highway 83 at about 8:30 P.M. on the 8th of April at a point about a mile to a mile and a half south of Coleharbor. In this vicinity the course of the highway is parallel to the right of way of the Soo Railway and runs generally from northwest to southeast. The right of way is southwest of the highway. Defendant's land abuts the railroad right of way on the southwest and is separated from it by a right of way fence. In order to reach his land from Highway 83, it was necessary for defendant to cross the railroad right of way. In the winter preceding the collision defendant's customary way

of entry across the tracks had been blocked by snow and he had secured permission from the railway company to use an emergency crossing at a point where there was a wooden gate in the right of way fence. Defendant removed this wooden gate. He said he replaced it with a wire gate which he kept closed. On the other hand Melvin Thorson, the section foreman in charge of right of way maintenance, stated that he never saw the wire gate and that there was no wire gate at the time he replaced the wooden gate after defendant's regular entry across the tracks was reopened.

Immediately prior to the collision plaintiff was traveling upon the highway in a southeasterly direction at a speed, according to his testimony, of 45 or 50 miles per hour. It was dark and the bright lights of the car were lighted. His testimony is that a car approached from the opposite direction with glaring headlights which made it impossible for him to see beyond it, that he dimmed his headlights and diminished his speed as the two cars neared each other, that just as the other car passed he saw two animals coming across the road from his left, "from behind the other car". He missed the first animal but struck the second one which he said was only 30 to 40 feet away from him when he first saw it. He said, "I didn't have an opportunity to avoid hitting it and I was afraid I would turn the car over so I killed the car down and let it slide right along. There was a fellow behind me and I was afraid he might hit me." The skid marks left by plaintiff's car on the highway were 116 feet long and plaintiff estimated that his car traveled about 80 feet after striking the animal. None of the persons riding in plaintiff's car were injured. There is no question but that the animals belonged to the defendant.

It was plaintiff's theory that the cattle left defendant's pasture by way of the gate in the right of way fence. Defendant, however, testified that the tracks of the animals in the snow showed where they went through the fence. This fence was woven wire at the bottom, topped by three strands of barbed wire. Defendant said that at the place where the animals' tracks were, the woven wire had sagged and the barbed wire was loose. It was his theory that the cattle had "crawled" through the fence in the space between the woven wire and the first strand of barbed wire. He said that 12 animals had got out of the pasture, while plaintiff said there were 15 to 20 out on the highway. Defendant stated that he had not inspected the fence prior to this occasion. He said, "It was early in the spring yet and I never went around to fix the fences."

Upon this record are negligence on the part of the defendant and absence of contributory negligence on the part of the plaintiff established as a matter of law? We think not. Questions of negligence and contributory negligence are questions of fact for the jury unless the evidence is such that reasonable men can draw but one conclusion therefrom. Armstrong v. McDonald, 72 N.D. 28, 4 N.W.2d 191; Fagerlund v. Jensen, 74 N.D. 766, 24 N.W.2d 816; Pachl v. Officer, N.D., 54 N.W.2d 883.

Plaintiff asserts that defendant's negligence arises out of a breach of a statutory duty. Section 36–1101, NDRC 1943, provides: "No cattle, horses, mules, swine, goats, or sheep shall be permitted to run at large" except under certain conditions which do not exist in this case. Section 36–1107, NDRC 1943, provides: "The owner or possessor of * * * cattle which shall inflict any damage to the crops or other property of another * * * shall be liable to the person sustaining the injuries or to the owner of the lands for all damages suffered by him * * *." These sections are part of the "Herd Law" as it appears in the 1895 Code. From the time at which this law was enacted, and the provisions of the act generally, we are satisfied that its purpose was to protect the state's chief industries, cattle raising and agriculture. It is a general rule that a party seeking to recover damages under such an act must be within the class the statute was enacted to protect. Hansen v. Kemmish, 201 Iowa 1008, 208 N.W. 277, 45 A.L.R. 498; Fox v. Koehnig, 190 Wis. 528, 209 N.W. 708, 49 A.L.R. 903; Sidle v. Baker, 52 Ohio App. 89, 3 N.E.2d 537;

Champlin Refining Co. v. Cooper, 184 Okl. 153, 86 P.2d 61. A traveler upon a highway therefore has no cause of action by virtue of the "Herd Law" but his rights and the defendant's duties are to be measured by the rule of due care. Hansen v. Kemmish, supra; Fox v. Koehnig, supra; Texeira v. Sundquist, 288 Mass. 93, 192 N.E. 611.

The question then is: Did defendant exercise ordinary care to prevent his cattle from running at large? There is proof that there was a weak spot in an otherwise substantial fence through which the cattle emerged from the pasture. There is proof that defendant turned his cattle into the pasture without first inspecting the fence. There is nothing in the evidence to show that defendant at that time knew or had reason to believe that the fence was defective. In these circumstances we are satisfied that the question of whether he exercised reasonable care was one for the jury. Traill v. Ostermeier, 140 Neb. 432, 300 N.W. 375; Eixenberger v. Belle Fourche Livestock Exchange, S.D., 58 N.W.2d 235.

Upon the question of whether the plaintiff exercised reasonable care, plaintiff himself testified that he passed an approaching automobile beyond which he could not see at a speed of 45 to 50 miles an hour; that at the moment he passed beyond the glare of the approaching car's headlights he saw the cattle upon the highway in his lane of traffic about 40 feet ahead of him, too late to avoid a collision. It is undisputed that the cattle came upon the highway from the side of the road opposite to plaintiff's lane of travel. To reach the spot where plaintiff first saw the animal he struck, it would have been necessary for the animal to come out of the ditch adjoining the highway and walk across the northeast lane into the southwest lane after the approaching car had passed. It is highly improbable that the cattle would have traveled such a distance while the fast moving approaching car was traveling but 40 feet. The jury might well have found that plaintiff's estimate as to the distance between his car and the cattle at the time the two cars passed each other was substantially inaccurate. Plaintiff claims that there is no evidence of negligence because he was not exceeding a speed limit of 50 miles an hour. Merely keeping within the speed limit does not absolve a driver of an automobile of negligence. The statute, Section 39-0901, NDRC 1943, provides: "Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, surface, and width of the highway and any other conditions then existing." In view of all the circumstances we are of the opinion that reasonable men could have concluded that the failure of plaintiff to reduce his speed below the admitted rate at a time when he was "blinded" by the glare of approaching headlights was not the exercise of reasonable care and that such lack of care contributed proximately in some degree to cause his damage. The question of contributory negligence was therefore one for the jury. See Ott v. Tschantz, 239 Wis. 47, 300 N.W. 766.

In addition to his challenge to the sufficiency of the evidence, plaintiff has also specified as error certain of the trial court's instructions and comments.

The trial court instructed the jury:

"Every motor vehicle operating on a highway during a period from a half hour after sunset to a half hour before sunrise shall be equipped with two head lamps arranged and adjusted so that they will under normal atmospheric conditions and on a level road produce a driving light sufficient to render clearly discernible a person two hundred feet ahead."

Plaintiff does not say that the foregoing instruction is not a correct statement of the law, but that the instruction was not applicable to the facts of the case and could have confused the jury to his prejudice. Plaintiff testified that at the time the collision occurred he was driving with his headlights dimmed and that his clear view

was but 100 feet ahead. He had just passed a car traveling in the opposite direction and did not have time to elevate the beam of his headlights before the accident.

Section 39–1004, NDRC 1943, provides:

"Whenever a motor vehicle meets another motor vehicle on any highway, the operator, at a distance of not less than 500 feet, shall tilt the beams of the head lamps downward * * * lamps shall give sufficient illumination under normal atmospheric conditions to render clearly discernible and on a level road a person seventy-five feet ahead, * * *."

There was no mention of the foregoing statute in the instruction and there was no request for an instruction in connection therewith.

The instruction which was given should not have been given because the adequacy of plaintiff's lights was not at issue in the case. However, we do not see how the giving of the instruction could have confused the jury or how it could have been prejudicial to the plaintiff. Plaintiff had testified that he could see clearly 200 feet with his bright lights on and 100 feet with his lights dimmed. Thus the only evidence in the case was that plaintiff's bright lights conformed to the law as laid down by the court. We cannot assume that the jury was unaware of facts that are common knowledge today, to wit: that all automobiles are equipped with devices to depress the beams of headlights, and that both law and courtesy require the use of such devices by operators of vehicles which approach each other in the nighttime from opposite directions. We believe the jury could not but understand that plaintiff's use of dimmers which reduced his clear vision to a distance of 100 feet ahead was not only permissible but was required by law. The instruction therefore could not have been prejudicial.

■ The second instruction specified as error is as follows: "The proximate cause of any injury is that which causes it directly or immediately, or through a natural sequence of events, without the intervention of another unforeseen independent and efficient cause. The fact that the injury would not have happened but for the act does not necessitate the conclusion that such act was the proximate cause of the injury. Where a person is negligent in some respect and between his negligence and the injury an entirely, unrelated and unforeseen cause intervenes, the second is generally regarded as the proximate cause and the first as the remote cause." Plaintiff objects to this instruction, "because there is no evidence of an intervening independent and efficient cause." At this point in the instructions the court was not delineating the issues in the action, but was defining the legal significance of the words "proximate cause". We can find no fault with his attempt to make the definition more clear by drawing a contrast between proximate cause and remote cause.

The third instruction specified as error was that submitting the issue of contributory negligence to the jury. What we have already said in this opinion concerning contributory negligence disposes of this specification.

■ Lastly, plaintiff asserts that the court erred in commenting on the evidence. The transcript shows the following:

"Mr. Vogel: Q. During the period when his regular road was out and you said there was no gate there, did you see any of Mr. Flath's cattle out? A. No.

"Miss Van Berkom: I move to strike that answer so I can make an objection.

"The Court: Strike it out.

"Miss Van Berkom: That is objected to on the grounds it is incompetent, irrelevant and immaterial, no bearing on the issues in this lawsuit, and not within the issues.

"Mr. Vogel: If the court please, the apparent purpose is to show if the cattle were out.

"The Court: I think I will sustain the objection. If I remember it the

defendant denied his cattle were around, and this would be a collateral issue. I don't think there is any proof that they had been running around except this one time they were out."

The remarks of the trial court last above quoted are asserted to be error. These remarks do not constitute a comment on the testimony in the objectionable sense in that they comment upon the credibility or weight to be given to testimony. They merely state what the record showed as to certain matters. If the statement of the court was accurate, and it is not challenged on that ground, it was not error. 53 Am.Jur., Trial, Sec. 79, p. 78; 64 C.J., Trial, Sec. 100, p. 97.

Since we find no prejudicial error in the record the judgment of the district court is affirmed.

MORRIS, C. J., and SATHRE and GRIMSON, JJ., concur.

JOHNSON, J., did not participate.